636 A.2d 1284

**PLEASANT TRUCKING, INC., Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 15, 1993.

Decided Jan. 12, 1994.

Milton V. Munk, Jr., for petitioner.

Steven I. Roth, Asst. Counsel, for respondent.

Before DOYLE and KELLEY, JJ., and RODGERS, Senior Judge.

KELLEY, Judge.

Pleasant Trucking, Inc. (Pleasant Trucking) appeals from an order of the Secretary of Transportation (Secretary) which made final a Pennsylvania Department of Transportation (Department) hearing officer's proposed report and order denying Pleasant Trucking's request for access for 102–inch wide trailers to certain highway routes. We affirm.

The following relevant facts were set forth in the hearing officer's proposed report and made final by the Secretary:

1. Pleasant Trucking, Inc. ("Pleasant Trucking") is a trucking company with its principal place of business ("Ter-

minal") on North Pittsburgh Street Extension, Connellsville, Pennsylvania.

2. Pleasant Trucking filed, on April 11, 1991, an application for access to Pennsylvania Route 982 from the point where it intersects U.S. Route 119 to a point where it crosses State Route 31 and then on State 31 to the point where it meets the Pennsylvania Turnpike at Donegal Interchange.

3. The access was for 48 foot long, 102 inche [sic] wide trailers.

4. On August 20, 1991, the Pennsylvania Department of Transportation ("Department") denied Pleasant Trucking's request.

5. The denial letter stated "truck accidents on this mountain. In addition, this Route had previously been denied for Anchor Glass and Dettinburn Trucking."

6. Pleasant Trucking has access to and uses U.S. Route 119 to the New Stanton Interchange of the Turnpike thence to the Donegal Interchange eastbound.

7. Pleasant Trucking has no terminals or customers on Route 982 or 31.

. . . .

9. Pleasant Trucking sends six to eight trucks daily eastbound, five days a week, twenty-four hours a day.

. . . .

11. The proposed Route is 14.2 miles in length.

12. The portion of Route 982 proposed for access has 2 lanes, each eleven feet in width, with improved and unimproved shoulders from one to five feet in width.

13. On the portion of Route 31 proposed for access known as Three Mile Hill there are three traffic lanes, each eleven feet wide, and paved shoulders eight feet wide.

14. Two lanes on Three Mile Hill are for easterly (uphill) traffic and one westerly (downhill).

15. At the top of Three Mile Hill, for westbound traffic; there is a mandatory area for trucks to pull off and come to a complete stop before proceeding.

16. The grade of Three Mile Hill varies from 3.8 percent to 10 percent.

17. On Three Mile Hill there are six 6–degree curves, one 7–degree curve; one 5–degree curve, one 4–degree curve; and one 3–degree curve with higher numbers indicating more severe curves.

18. The remainder of Route 31 proposed for access has two travel lanes, each eleven feet in width, with improved and unimproved shoulders from two to six feet wide.

19. The relevant part of the currently used Route 119 to New Stanton Interchange then the Turnpike to Donegal is 29.5 miles in length.

20. The current Route at posted speeds takes 34 minutes.

21. The proposed Route at posted truck speeds takes 25 minutes.

22. In considering access Routes for 102 inch wide trailers the Department considers road width, shoulder width and condition, highway geometrics such as grade and curves, whether limited or uncontrolled access, previous accident history, traffic volume, availability of alternate routes, sight distances, and such particular restrictions as height or narrow or posted bridges.

23. In the five year period before the hearing there were five accidents involving tractor-trailers on Three Mill [sic] Hill, out of seven accidents all together.

24. In three of those accidents trucks ran off the road into the banks.

25. Of the accidents on 982 there was one where a flatbed trailer sideswiped a vehicle.

26. The Department in deciding on access routes does not consider the economic effects on trucking companies.

27. The Department's Engineering District 12 ("District") denied access because (1) approximately 8% of the

accidents on Three Mile Hill involved large trucks; (2) the Districts existing knowledge of large truck problems on mountain roads; (3) the fact that same route had previously been denied to two other truckers; and (4) the availability of a much safer alternate route.

28. The District compared safety factors of Route 119 and the Turnpike with Routes 982 and 31.

29. Both route 119 and the Turnpike are limited access highways.

30. The Turnpike has four twelve foot lanes divided by a median and eight to ten foot shoulders.

31. The maximum grade on the Turnpike is three percent.

32. On the relevant portion the Turnpike has four 4–degree curves and one 5–degree curve, all others are less than three degrees.

33. There are no major grades on Route 119.

34. The District has had numerous runaway truck accidents, some involving fatalities, on the three major traffic routes entering the District down from mountains with steep grades and severe curves.

35. Route 31's Three Mile Hill ends in a populated area at the bottom of the hill, where it intersects with Route 982.

36. Steep grades on truck routes get particular attention from the Department comparing percentage of trucks and percentage of accidents when considering whether to add additional truck traffic.

37. Route 982 has postal and other delivery trucks, bicycle riders, and pedestrians.

The hearing officer concluded that the federal Surface Transportation Assistance Act (STAA)[1] and the regulations promulgated thereunder governed decisions on access from

1. 49 U.S.C.App. §§ 2301–2316.

the National Network[2] to terminals[3] for STAA vehicles such as 102 inch wide trailers and that under the STAA and the accompanying regulations the Department did not abuse its discretion in denying Pleasant Trucking's request for access. The hearing officer affirmed the Department's denial of Pleasant Trucking's request for access.

Pleasant Trucking filed exceptions to the hearing officer's proposed report and order. The Secretary denied the exceptions and made final the hearing officer's order affirming the Department's denial of Pleasant Trucking's request for access. This appeal followed.[4]

Pleasant Trucking raises the following four issues on appeal:

1. Whether 67 Pa.Code § 209.3 governs Pleasant Trucking's request and, if so, should the request be "deemed approved" for failure of the Department to act within ninety (90) days;

2. Whether the Department's ruling violates the applicable federal regulations as contained in 55 Fed.Reg. 22758 and codified at 23 C.F.R. § 658 (1990);

3. Whether the Department's ruling amounts to an abuse of discretion since it gave no consideration to the economic effect on the businesses located in Fayette County; and

---

2. The STAA required that a federal National Network be designated and that reasonable access be provided to commercial STAA vehicles for travel between designated primary highways and facilities for food, fuel, repair and rest, and to terminals. Under the STAA and regulations promulgated thereunder, states are permitted to establish their own provisions for reasonable access to and from the National Network for commercial motor vehicles with the dimensions and configurations authorized by the STAA. 55 Fed.Reg. 22758.

3. Pursuant to federal regulations governing the reasonable access for commercial vehicles with lengths and widths authorized by the STAA, the term terminal means any location where:
   (1) Freight either originates, terminates, or is handled in the transportation process; or
   (2) Commercial motor carriers maintain operating facilities.
   23 C.F.R. § 658.5(r).

4. This court's scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

4. Whether Department's ruling is supported by substantial evidence upon which the denial could be based.

## I. DEEMED APPROVAL

■ Pleasant Trucking argues that 67 Pa.Code § 209.3 governs its request for access and since more than ninety (90) days passed from the time the application was submitted and the time a denial was received from the Department, its request must be deemed approved.

Chapter 209 of the Pennsylvania Code governs requests for reasonable access to the designated highway network. Under 67 Pa.Code § 209.1, reasonable access may be granted to combinations authorized by the Vehicle Code, specifically, 75 Pa.C.S. § 4904(e) (relating to limits on numbers of towed vehicles) to have two trailers, or by 75 Pa.C.S. § 4923(b)(6) (relating to length of vehicles) to exceed the length limitation for combinations. An application for access may be made in writing to the Department. 67 Pa.Code § 209.2. Approval of applications is governed by 67 Pa.Code § 209.3 and provides, in part, as follows:

(a) A request for route approval under this chapter will be either approved as submitted, approved with additional listed restrictions upon operation, or disapproved in writing within 30 days of receipt of the request by the Department of Transportation, or the relevant city or municipal highway department. In the event the requested route requires the approval of the Department and one or more municipalities, the 30–day period for review by a municipality shall commence upon receipt of the request by the municipality. The 30–day period for review by the Department will commence upon receipt of approval or disapproval from all municipalities involved, or expiration of the municipalities' 30–day period for review, whichever comes first. In no event will this process take longer than 90 days without the consent of the applicant.

. . . .

(c) An application not approved or disapproved within the time periods stated in this section will be deemed approved

by the Department or the relevant city or municipal highway department.

The Department contends that Chapter 209 of Title 67 of the Pennsylvania Code does not apply in the instant matter. We agree. Chapter 209 only applies to requests to operate tractor-trailer combinations with two trailers, 75 Pa.C.S. § 4904(e), or to exceed the length limitation for tractor-trailer combinations, 75 Pa.C.S. § 4923(b)(6). 67 Pa.Code § 209.1.[5] Chapter 209 does not govern requests to operate combinations wider than the Vehicle Code allows. The Vehicle Code, 75 Pa.C.S. § 4921, governs the width of vehicles and the plain language of 67 Pa.Code § 209.1 does not include 75 Pa.C.S. § 4921.

Pleasant Trucking also contends that its request for access was deemed approved under the federal regulations promulgated pursuant to STAA. Specifically, Pleasant Trucking relies on 23 C.F.R. § 658.19(i)(2)(ii)(B), 23 C.F.R. § 658.-19(j)(1), and 23 C.F.R. § 658.19(j)(3) which provide as follows:

(i)(2) State access review processes shall provide for:

. . . .

(ii) All of the following:

. . . .

(B) The automatic approval of an access request if not acted upon within 90 days of receipt by the State. This provision shall become effective no later than 12 months following the effective date of this rule unless an extension is requested by the State and approved by FHWA (Federal Highway Administration).

. . . .

---

**5.** 67 Pa.Code § 209.1 provides as follows:

**§ 209.1 Purpose and application.**

Combinations authorized by 75 Pa.C.S. § 4904(e) (relating to limits on numbers of towed vehicles) to have two trailers, or by 75 Pa.C.S. § 4923(b)(6) (relating to length of vehicles) to exceed the length limitation for combinations may be granted reasonable access to utilize highways between the highway network designated under 75 Pa.C.S. § 4908(a)(1) (relating to operation of certain combinations on interstate and certain primary highways) and terminals or points of loading or unloading of household goods, as provided by 75 Pa.C.S. § 4908(a)(2)(ii) and (b)(2), if the terminals or points may be accessed safely and reasonably.

(j)(1) Each State shall submit its access provisions to FHWA for approval within 6 months after June 1, 1990. . . .

. . . .

(j)(3) Any State that does not have FHWA approved access provisions in effect within 1 year after June 1, 1990 shall follow the requirements and the criteria set forth in this section and section 658.5 and 658.19 for determining access for STAA-dimensioned vehicles to terminals and services. The FHWA may approve a State's request for a time extension if it is received by FHWA at least 1 month before the end of the 1 year period.

Pleasant Trucking argues that based on these federal regulations, the Commonwealth had to either adopt regulations which met the standards set out in the federal regulations within six months of June 1, 1990, or it had to request a time extension by May 1, 1991. Pleasant Trucking contends that the 90 day deemed approval rule found in 23 C.F.R. § 658.-19(i)(2)(ii)(B) became effective on May 1, 1991 in regards to the Commonwealth, since it did not submit a set of regulations for approval by December 1, 1990 nor did the Commonwealth submit a request for extension of time by May 1, 1991.

It is well settled that federal regulations do not apply retroactively unless their plain language expressly provides. *Bowen v. Georgetown University Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). The regulations relied upon by Pleasant Trucking became effective on June 1, 1990. 55 Fed.Reg. 22,758.

The ninety-day deemed approval provision of the federal regulations specifically states that the "provision shall become effective no later than twelve months following the effective date of this rule unless an extension is requested by the State and approved by" Federal Highway Administration. 23 C.F.R. § 658.19(i)(2)(ii)(B). Therefore, the effective date of the ninety-day deemed approval provision is June 1, 1991.

The fact that a state must request a time extension by May 1, 1991 to submit its access provisions to the Federal Highway Administration does not change the plain language of the

effective date of the ninety-day deemed approval provision. Nor does the requirement that each state submit its access provisions to the Federal Highway Administration for approval within six months after June 1, 1990. 23 C.F.R. § 658.19(j)(1).

Federal regulation 23 C.F.R. § 658.19(j)(3) clearly provides that a state that does not have approved access provisions by June 1, 1991 shall follow the requirements of 23 C.F.R. § 658.19 which states the effective date for the ninety-day deemed approval provision. Therefore, the plain language of the regulations is controlling and the language clearly does not provide for retroactive application. Accordingly, the ninety-day deemed approval provision of the federal regulations was not in effect at the time Pleasant Trucking filed its request for access and the request was not deemed approved for failure by the Department to render a decision within ninety days.

## II.  FAILURE TO CONSIDER ECONOMIC IMPACT

█ Pleasant Trucking argues that the Department committed an abuse of discretion by failing to take into consideration the economic impact that the denial of Pleasant Trucking's request for access would have on the business climate in the Fayette County area. Pleasant Trucking does not cite to this court any statutory, regulatory or case law in support of this argument. Although this court is sensitive to the importance of economic health to our citizens, our decisions must be based upon the specific standards in our laws.

Under the federal regulations a state is not required to take into consideration the economic impact of a request for access. A state must take into consideration the safety and engineering analysis of the requested access route and, in the case of a 102-inch wide trailer, the characteristics of specific routes, in particular significant deficiencies in lane width. *See* 23 C.F.R. § 658.19(i)(2)(ii).

In addition, Pleasant Trucking already has a safe access route to the National Network. Pleasant Trucking admits that it does not have any terminals or customers on the

requested access route and that it has access to U.S. Route 119 through the New Stanton Interchange. What Pleasant Trucking is requesting is a shorter and more economical access route. In light of the safety concerns and lane width deficiencies that the Department is required to consider in granting or denying a request for access and the fact that Pleasant Trucking currently has an access route to the National Network, the Department did not abuse its discretion in failing to take into consideration the economic impact of Pleasant Trucking's request for access.

## III. SUBSTANTIAL EVIDENCE

Finally, Pleasant Trucking contends that the Department's denial of its request for access was not supported by substantial evidence. However, a review of the record reveals that the denial of Pleasant Trucking's request is supported by substantial evidence.

The Department presented evidence and the hearing officer found, as a fact, that the requested access route contains sharp curves, narrow lanes, unpaved shoulders and steep down grades. The most compelling evidence to support the Department's denial was a video tape submitted by Pleasant Trucking showing a 102-inch wide trailer negotiating the proposed route. While the video showed the truck safely negotiating the route, it also clearly showed the sharp curves, narrow lanes, unpaved shoulders, and steep down grades.

Accordingly, the Secretary's order denying Pleasant Trucking's exceptions to the proposed report and making final the order of the hearing officer affirming the Department's denial of Pleasant Trucking's request for access is affirmed.

## *ORDER*

NOW, this 12th day of January, 1994, the order of the Secretary of Transportation, dated June 2, 1993, at No. 095 A.D.1992, is hereby affirmed.